HATHORNE v. HAINES.

A local action must be brought in that county which claims and exercises ju-
risdiction over the place which gives rise to such action :—Nor is it compe-
tent for a defendant, merely with a view to avoid the jurisdiction on the
principle that the action is local, to shew that *de jure* the line of the county
ought to be established in a different place from that in which it is actually
established and known.

If the *grantee* of one who was disseised at the time of the conveyance enter on
the land, he is a trespasser; and having gained possession by his own tor-
tious act, he cannot avail himself of his deed to render his continuance in
possession lawful.

This action was brought to recover seisin and possession of a
tract of land, described in the writ as being in the town of *Pitts-
ton* in the county of *Kennebec.* The demandant, in support of his
action, gave in evidence sundry deeds, deriving his title ultimate-
ly from the Proprietors of the *Kennebec* purchase to a lot of land
bounded southerly by a road which formed the northern boun-
dary of the town of *Dresden,* formerly *Pownalborough,* in the
county of *Lincoln,* and adjoining the town of *Pittston;* and he
gave some evidence of an ancient line situated south of the de-
manded premises, which might be supposed to be this boundary.

The tenant then offered evidence of a line still more ancient,
situated about *twenty-five rods north* of the line first proved, and al-
so proved that the lot of land contained in the demandant's deeds
was actually located north of and bounded by the line last testifi-
ed to; which several witnesses testified was the true northern
boundary of *Pownalborough.* And by this location the Judge
was of opinion that the demandant was bound.

The demandant thus failing to support his title by deeds, at-
tempted to prove a title by possession; and shewed that from

Hathorne *v.* Haines.

the year 1812, he had kept about one acre of the premises inclosed within a fence, claiming and improving it as his own, until the tenant entered and ousted him.   The tenant then gave in evidence his own title, derived by mesne conveyances from the same Proprietors, and particularly a deed, dated *August* 24, 1815, conveying to him the lot of land, *No.* 23, in *Pownalborough*, which he contended covered the demanded premises, and which was described as bounded " northerly by the old town line," which was the name usually given to the line supported by the tenant; and it appeared by the plans used in the case that the lot *No.* 23 was the most northerly lot in *Pownalborough.*

It was also proved by the demandant that the selectmen of the towns of *Dresden and Pittston*, being in the year 1808 appointed a committee by their respective towns to ascertain and determine the boundary line between them, after due investigation agreed upon the southerly line above mentioned as the true boundary, and perambulated and marked it accordingly ;  and that the line thus marked had ever since been acquiesced in by the two towns, and the land north of this line accordingly assessed in *Pittston.*

Upon this evidence the Judge who presided at the trial of the cause instructed the jury, that whatever might otherwise have been the tenant's title to the demanded premises, yet if they believed that the inclosure of a part of the land within fences by the demandant was a disseisin of the tenant's grantor of the part thus inclosed, they were bound, as to this part, to find a verdict for the demandant, which they accordingly did.

The tenant thereupon moved for a new trial, alleging 1st, that the jury ought to have been instructed to find for the tenant, if they believed the north line to be the true boundary of *Pittston*, because in that case the demanded premises would be in the county of *Lincoln ;*—2d, that the Courts in the county of *Kennebec* have no jurisdiction of the subject matter ;—3d, that the deed to the tenant, after entry by him, would operate to confirm his title against the demandant.

Upon this motion, which was opposed by *R. Willaims* for the plaintiff, and supported by *Allen* for the defendant, the counsel submitted their arguments in writing, during the last vacation, in substance as follows.

Hathorne *v.* Haines.

*For the motion,* it was contended that the true location of the line was a fact to be derived from all the evidence in the case, was necessary in order to determine the rights of the parties, and was exclusively within the province of the jury ; but according to the direction of the judge, had they been unanimously agreed that the north line was the true boundary, with which the north line of the lot *No.* 23 strictly coincided, yet they were bound to find for the demandant if they believed he had inclosed a single acre, prior to the date of the tenant's deed. If, however, a distinction be attempted to be made between a jurisdictional limit *de facto,* and the boundary *de jure,* and it should be thence argued that the marking of the line by the Selectmen in 1808 and the subsequent acquiescence of the two towns, may have effect to give jurisdiction to the Courts ; it may be replied that this would go to remove the basis of their jurisdiction in real actions, from the statutes establishing the counties, to the mere pleasure of the selectmen of two bordering towns. Independent of the fact that the tenant and those under whom he claims have uniformly protested against the perambulation by the Selectmen in 1808, it may be observed that the statute of 1785, *ch.* 75, provides that " the bounds of all townships shall be and remain as heretofore granted, settled and established ;" and *Pownalborough* was incorporated and its bounds established in 1760, *Pittston* in 1779 ; and *Dresden,* in 1794, succeeded to this part of *Pownalborough.* What the line of this town therefore was in 1786, it must still remain. The whole power of the selectmen, given by the same statute, is only to *run* and *renew* the bounds of towns ; not to alter or change them. This Court must have a right to inquire by a jury *where* is the line between the two towns, and parties interested have a right to prove that the selectmen committed an error in fixing that line where they did, in which error they have constantly persisted. If this court has not the power, in what manner are the errors of the Selectmen to be corrected ? If the tenant has not the right to prove their mistakes, then his evidence to that point ought not to have been received, for a jury ought not to hear evidence which they are not permitted to weigh.

If the selectmen cannot alter the town line, *a fortiori,* they cannot change the lines of the two counties. This line was by the

act of *February* 20*th*, 1799, erecting the county of *Kennebec*, established as the south line of *Pittston ;* and wherever this boundary then was, there it must remain. If this be not true, then any two towns, bordering on a county line, might by collusive agreement oust this Court of its jurisdiction over the greater part of either town, at their pleasure.

If this were an action against a collector of the town whose territory is thus enlarged by agreement of the selectmen, for a distress of taxes assessed upon the territory thus acquired, it might be contended with more appearance of good reason that the two towns having agreed upon a disseisor, the collector should be justified. Even in that case, however, it is difficult to suppose that the plaintiff would not have a right to prove that the line thus agreed on was fixed in a wrong place. There can be but one boundary line between the two towns. Either party has an unquestionable right to prove by the best evidence in his power where that line is; and wherever it is proved to be, there is the north bound of the tenant's land.

This is not a case, it is conceived, where the Court may or may not grant a new trial, in the exercise of its discretion; but where, if they are satisfied that the jury were improperly limited by the directions of the Judge, the verdict must be set aside. *Boyden v. Moore,* 5 *Mass.* 365.

It is further necessary that a new trial be granted or the judgment arrested for defect of jurisdiction of the subject matter ; for upon the supposition that the north line is the true boundary, the judgment cannot be executed. The demandant, and any Sheriff of *Kennebec* attempting to execute the *habere facias* would be trespassers.

As to the *third* cause, it is contended that the direction of the Judge was erroneous ; for however true it may be that a deed of land, of which the grantor is disseised at the time of the conveyance, cannot operate to authorize the grantee to maintain an action against the disseisor ; yet if the grantor's right of entry be not lost, and the grantee afterwards gain possession, his deed will operate to confirm his possession against a mere disseisor. The Court will direct the jury to presume, if necessary, that the deed was not delivered till the grantee entered. *Knox v. Jenks,* 7 *Mass.* 488. In the present case the right of

entry was not gone when the tenant entered; and the writ shews that the tenant was in possession of the land.

*Against the motion*, it was answered that inasmuch as the land demanded is described by metes and bounds, and alleged to be in *Pittston* in the County of *Kennebec*, if the tenant would contend that the premises were in a different town and county, he should have pleaded this in abatement to the writ, and thus have given notice to the plaintiff that the town and county lines were to be controverted. The question whether the land lies in *Kennebec* or *Lincoln* is not to the merits of the action. There is nothing in the record to shew a want of jurisdiction, and the Court will not, after a trial upon the merits, deny the plaintiff the fruits of his verdict, if it can legally be sustained. *Gage v. Gannet*, 10 *Mass.* 176. *Byrnes v. Piper*, 5 *Mass.* 363.

But if it be considered that the matter of this objection need not be taken in abatement, but may be shewn under the plea of *nul disseisin*, then it is contended that the line has been fixed and established by the selectmen of *Pittston* and *Dresden* in 1808, so far at least as to settle the jurisdiction of those towns, and of the courts of the two counties; for it will be recollected that the line of the counties is to be ascertained, according to the statute, only by referring to the lines of those towns. There is no evidence that the northerly old line was ever recognized by *Pownalborough*, *Pittston* or *Dresden*, as the dividing line of the towns; but there is evidence that the old south line was established as the town line, and as such has been long acquiesced in. Admitting, with the tenant, that the power of the selectmen was only to *run* and *renew* the lines of the towns—not to alter or change them; the evidence is that they did the former, and not the latter. The tenant contends that there were two old lines, one of which was the town line, the other not; and so say the selectmen, who, after due inquiry and examination, ascertained the south line to be the true boundary, and as such renewed and marked it. This is neither establishing a new line, nor altering an old one. And if this is not binding and final as to the titles of parties whose lands are bounded upon the line, yet as to the question of jurisdiction it is conclusive. The known lines, settled by the municipal authorities, are alone to be regarded in questions of this nature. If the law were not so,

the perplexities and embarrassments of executive officers would be very great, and the mischiefs incalculable.

But the Court will observe that as no question was made at the trial respecting county lines, so no direction on that subject was given to the jury; and as there was evidence of two lines, the jury were to determine which of the two was best proved; and this fact is settled by the verdict.

The direction of the Judge is to be considered in reference to the demandant's title compared with the tenant's, and not to any question of county lines which had not been even suggested at the trial. If the land, described as it is in this writ, were actually without the county, and the parties, proceeding to trial on the general issue, had exhibited all their title-deeds and other evidence to the jury, and no suggestion being made of the fact that the land was without the county, the Judge had instructed the jury that if they believed the demandant's deeds to be genuine and his witnesses to have testified truly, the cause was with him, but if they doubted these, the cause was with the tenant, and they had thereupon found for the demandant,—would it *then* be competent for the tenant to suggest that the land demanded was without the county, and could a new trial be granted for a misdirection of the Judge in matter of law? Much less can it be in the present case, where the land is in truth within the county.

As to the *third* cause,—that a deed of land of which the grantor is disseised at the time of making the deed, does not operate to convey the land, is a principle too long settled to admit of question. If nothing passed by the deed to the tenant, then any entry of his upon the possession of a disseisor was a trespass; and an inoperative deed to him cannot be construed to change that trespass into a rightful entry and possession against the disseisor. Besides, there is no evidence that the tenant ever did enter under his deed, or gain possession of the land, except what is derived from the bringing of this action; and if the admission of the demandant must be used against him, it is to be taken altogether as it is made, which is, that the tenant *unjustly and without judgment of law* entered and ousted the demandant. As to the argument drawn from the case of *Knox v. Jenks*, the facts in the present case do not support it. In that case the grantor,

his right of entry not being lost, entered on the land and there delivered the deed, which took effect as a feoffment, and thus was supported. But here there was *no entry* by the *grantor*, and no other person had the right of entry.

*Allen, in reply,* insisted that where the Court has no jurisdiction of the subject, it is not necessary to plead this in abatement, but the objection may well be taken under the general issue. 1 *Chitty on pleading* 270. 427. The jurisdiction of this Court being appellate, it can sustain no action the subject matter of which was not within the jurisdiction of the Common Pleas. That Court, by the statute creating it, had cognizance of all civil actions ——— " arising or happening within their county." And though, by a fiction of law, actions transitory may be supposed to arise there, yet it is not so with actions local ; and such are all actions of ejectment, where possession of the land in controversy must be delivered by the Sheriff of the county in which it is situated. *Cowp.* 176. *Mayor of London v. Cole,* 7 *D. & E.* 587. Where the Courts are of limited jurisdiction, the cause of action must be alleged to be within its jurisdiction ; and if the fact be so alleged, but *not proved,* the plaintiff ought to be nonsuited. 1 *Chitty on pleading* 428. All material facts alleged in the declaration are denied by the general issue ; and in this case it is a material fact that the land lies in the county of *Kennebec.*

The true question was, where is the north line of *Dresden ?* To this point there was evidence on both sides, which it was the province of the jury to weigh, and according as it preponderated, to adopt the result. It was a fact material in their inquiry, and had they found the northern line to be the true boundary, as it would leave the demanded premises without the county, they could not have found the verdict they did, but ought to have found for the tenant. And whether the Judge was requested or not to give such direction, if, upon the evidence, such direction ought to have been given, and there has consequently been an imperfect trial, the Court will send it again to the jury. It is not contended that the Judge misstated any abstract principle of law, but that no stress was laid by him upon the contingency that the land might fall without the limit o fthe county. The suggestion not having been made at the trial, it is not surprising

it should not have been noticed by the Judge; but yet a new trial is not the less necessary; as in *Page v. Pattee*, 6 *Mass.* 459. *Odiorne v. Maxcy*, 13 *Mass.* 178.

On the *third* point, it appears from all the decisions on this subject, that the Courts will give effect to a deed like that to the tenant from his grantor; *Wallis v. Wallis*, 4 *Mass.* 135. and the cases there cited; 2 *Wils.* 75. and this often has been done under circumstances far less favourable to its operation than the present. A feoffment " cleareth all desseisins, abatements," &c. *Co. Lit.* 9. *a.* In *Knox v. Jenks*, 7 *Mass.* 493. it is said by the Court that " a seisin may be obtained under such a deed *by* " *the grantee* named therein, and his entry under it upon a dis- " seisor *is lawful*, and will *revest the possession according to the* " *title.*" Speaking of the deed as a feoffment, the Court ob- serve that " no precise words are requisite to a feoffment; and " here was a livery in fact according to the deed; or if *that cer-* " *emony had been wanting*, it would have been supplied by the " statute effect from an acknowledgement and registry." But the case of *Pray v. Pierce*, 7 *Mass.* 381. is still more in point, where a similar effect was given to a mere *quitclaim-deed* to land held by an open adverse possession; the Court observing that it was their duty so to construe it, as to give effect to the lawful intent of the parties.

PREBLE J. at this term delivered the opinion of the Court, as follows.

When an action, local in its nature, is commenced in a wrong county, the defendant is not obliged to plead the fact in abatement. If the objection appear on the record, he may avail himself of it on demurrer; or if it do not appear on the record, as in the case at bar, he may avail himself of it on trial under the general issue. *See the authorities cited in* 1 *Tidd prac.* 369. *and* 1 *Chitty on pleading* 269. 270. 284.

The strip of land in controversy adjoins the county line. There had been some doubt whether that line ran the one side or the other of this strip; but, as the line has been known and recognized by the towns and counties, interested in the question, for the last twelve years, the land lies within the county of *Ken-nebec.* Now by *Stat.* 1785. *ch.* 75. [*Revised statutes ch.* 114. *sec.*

Hathorne *v.* Haines.

8.] in order " *to prevent an interference of jurisdiction*" the select-men of adjoining towns are required once in five years to run the lines and renew the boundaries between their towns. In pursuance of the authority, given to them by this statute, and by the special request and direction of the two towns of *Pittston* and *Dresden*, the selectmen of those towns in 1808, after care-fully and in good faith investigating the subject, marked and established the present line, as the true boundary of their towns, which is the line of the counties, not by making a new line, where none existed before, but by marking anew a well known old line, believing it, from all the evidence they could obtain, to be the true one. These proceedings were reported to and approved by the two towns; and the line, thus ascertained and established, has ever since been known and recognized by the adjoining towns and counties, as the line between them. Nay neither the tenant himself nor his counsel thought of questioning that line as the jurisdictional limit, until since the jury returned a verdict against them. But however early the objection had been taken, it could have had no influence on the verdict to be returned by the jury. The proceedings of the two towns, their continual acquiescence, the acquiescence of the two coun-ties, and the consequent exercise of jurisdiction on the part of *Pittston* and *Kennebec*, and the forbearing even to claim jurisdic-tion from that period to the present day on the part of *Dresden* and *Lincoln*, are facts conclusive upon the parties, in so far as respects the question of locality. We hold that a local action for the very reason why it is made local, must be brought in that county, which claims and exercises jurisdiction over the place that gives rise to such action; and, that it is not competent for a defendant, merely with a view to avoid the jurisdiction on the principle that the action is local, to show that *de jure* the line of the county ought to be established in a different place from that in which it is actually established and known. This prin-ciple, it is manifest, does not at all affect the merits of the main question in controversy between the parties. Their lines may or may not coincide with the line of the counties as *now* known and admitted. This doctrine might be illustrated by reference to well known facts not indeed precisely analogous but suffi-ciently so for the purpose of illustration. Thus part of the line

Hathorne *v.* Haines.

between *Massachusetts* and *Rhode Island,* and also between *Massachusetts* and *Connecticut,* is still in controversy between those States. Could an individual, sued in ejectment in the Courts of *Massachusetts,* set up as a defence that, although by the line, as existing *de facto* the land lay in *Massachusetts,* and so within the county in which he was sued, yet if the line were run where it ought to be *de jure,* the land would fall within *Rhode Island* or *Connecticut ?* See *United States v. Hayward,* 2 *Gal.* 486. Such a principle would lead to infinite perplexity, confusion and uncertainty. It would be calling upon private suitors to settle at their own proper charge the line of conflicting jurisdictions ; and when perhaps at the expense of much pains and treasure, they had settled it, it would be settled only as between themselves in that particular action.

Nor do we think there is any thing in the other causes assigned which would justify us in setting aside the verdict. It is one of the first principles of the law applicable to real estate that he who is disseised cannot during the continuance of such disseisin convey to a third person. If he attempts to convey nothing passes by the deed. If the supposed grantee enter he is a trespasser, and having gained possession by his own tortious act he cannot avail himself of his deed to render his continuance in possession lawful. The defendant's motion is accordingly overruled and there must be

*Judgment on the verdict,*